LIZZIE TEIPEL and others *vs.* WILLIAM VANDERWEIER.

## February 28, 1887.

Family Settlement—Acquiescence by Minors after coming of Age—
Election—Estoppel.—T., in expectation of death, executed a deed of the ·
lands in question, which, by his direction, was held and not delivered
until after his death, when the grantee, in pursuance of the instructions ·
of T:, conveyed the premises to his widow, and took back a mortgage ·
running to himself as guardian of the plaintiffs, who were the minor
heirs of T., to secure them the amount equitably due them as and for their
shares in the premises, as amicably settled and agreed between her and
such guardian, which amount was duly paid to them in equal shares
when they severally became of age.  It appearing that all the parties to ·
these transactions acted in good faith, and without fraud or concealment,
and that the circumstances were sufficient to put the plaintiffs upon in-
quiry when they received their respective shares, *held*, that a subsequent
delay of upwards of nine years, without objection or further inquiry in
respect to the circumstances of the original settlement, should be deemed
equivalent to an election on their part to abide by and acquiesce in the
settlement so made for them.

The plaintiffs, Lizzie Teipel, Martin Teipel, and Caspar Teipel,
three of the five children and heirs-at-law of Lewis Teipel, deceased,
brought this action in the district court for Ramsey county, in Sep-
tember, 1885, to set aside as void a deed executed by their ancestor,
but not delivered by him, purporting to convey certain real estate to
one Martin Bruggermann, and a deed of the same property from
Bruggermann to Mary Teipel, widow of Lewis, who afterwards became
the wife of the defendant, and died.   The action was tried by *Brill*,
J.; who found the facts recited in the opinion, and ordered judgment
for defendant, which was entered, and the plaintiffs appealed.

*Pierce & George,* for appellants.

*H. J. Horn* and *Mainzer & Propping,* for respondent.

VANDERBURGH, J.   The trial court rested its decision in this case upon the ground that the plaintiffs were estopped, by the receipt of the distributive shares secured to them by the mortgage of their mother to their guardian, from questioning the validity of the deed executed by their father, which is in controversy here.   If there is sufficient evidence to sustain the findings of fact, and the latter support the conclusion of the court, it will be unnecessary to examine any other points raised in the case.

The following facts are established by the findings, and supported by the proof: ·

One Lewis Teipel, father of the plaintiffs, deceased January 30, 1865, intestate, leaving him surviving the plaintiffs and two other children, and his wife, Mary Teipel.   He had previously been sick of the disease of which he died, and three days before the last-mentioned date, in anticipation of death, and to avoid the necessity of probate proceedings, he executed and acknowledged a deed in due form, his wife joining therein, conveying the land in controversy, and running to one Martin Bruggermann as grantee, with instructions to have the same delivered in case of his death, upon the understanding that the grantee was to receive the same in trust, and reconvey the land to Mary Teipel, and that the latter should make provision for the children of the grantor satisfactory to Bruggermann.   The latter, before the decease of Teipel, was informed of the arrangement proposed, and consented to become a party thereto.   The deed was subsequently delivered to Bruggermann, April 20, 1865, who on the same day conveyed the same land to Mary Teipel, widow.   Both deeds were recorded April 27, 1865.   He was also appointed guardian of the children of the deceased, and thereafter, on the fifth day of January, 1866, in order to carry out the arrangement referred to, and the desires and purposes of the deceased, she executed to Bruggermann, as guardian, a bond by which she obligated herself to pay the sum of $3,500, to be equally divided among the children, or the survivors of them, as they respectively became of age, with annual interest; and also duly executed to him a mortgage of the land so con-

veyed to her, to secure the payment of the sum mentioned according to the terms of the bond, and such bond and mortgage were duly recorded on the date last mentioned. In pursuance of this obligation, Mrs. Teipel afterwards settled with each of the plaintiffs by paying them the amount due thereunder, according to its terms; that is to say, on the 18th day of October, 1872, she paid to Lizzie Teipel, who was then 21 years of age, her share; and on the same day to Bruggermann, his guardian, the amount due Martin Teipel, who became of age April 12, 1874, and who duly received the same from his guardian after he became of age; and to Caspar Teipel the amount due from her on or about January 3, 1876, he having reached the age of 21 years on the 25th day of December previous. Upon the receipt of such payment, the guardian, with whom the plaintiffs Caspar and Lizzie Teipel united, executed, under his hand, releases of all claim, interest, and demands under the mortgage referred to, which were also duly recorded in the years 1872 and 1876, respectively.

The court expressly finds that all the transactions above referred to, including the deeds, mortgage, and settlement, were had and done in good faith by the parties engaged therein. It is also found "that the plaintiffs, when they received the money paid by Mary Teipel as aforesaid, knew that said real estate belonged to their father prior to his death, and knew that there was some transaction by which the title thereto was transferred from their father to their mother at or about the time of his death; and they understood, also, that they were entitled to share in such real estate, and that the money received by them was paid to them as their shares, respectively, under an agreement between their guardian and their mother. The details of the transaction they did not learn, and did not inquire into, until early in the year 1885.

The guardian was the uncle of plaintiffs, and interested for them. Mrs. Teipel died in the early part of 1877, and the same year her estate was settled, when, as the court finds, this property was worth about $6,000. They understood that the sums received by them in settlement represented their shares in the land. The releases executed by them disclosed that the mortgage had been given to their guardian by Mrs. Teipel to secure the same. This would lead, if followed up, to the state of the record, and the nature of the title acquired by

Bruggermann. It is not pretended that there was any fraud or concealment, or that the plaintiffs were not aware of the value of the property, which was the family homestead, and well known to them. We think that when they became of age, and received their shares, they were put upon inquiry to ascertain how the settlement came to be made in this form between the parties. But they made no inquiry, and, from nine to twelve years before this action was brought, we find them acquiescing in the settlement of their father's estate, which was honestly, and, for aught that appears, fairly and equitably, made, and receiving and retaining without question their respective shares thereunder. Since all the parties were acting in good faith, there is no reason why the plaintiffs should not have exercised reasonable diligence to inquire, nor why, upon inquiry, they might not have ascertained, under what circumstances, and upon what conditions, the deeds were executed, and by what authority, and upon what inducement, their guardian consented to convey the land to Mrs. Teipel, and accept the mortgage for their benefit.

Under these circumstances, their failure to make any inquiry within a reasonable time should be treated as evidence of an election on their part to acquiesce in and abide by the terms of the settlement, and the case presents no equities which should move the court now to interfere to set it aside.

Judgment affirmed.